UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61591-CIV-COHN/SELTZER

CHANEL, INC.,

    Plaintiff,

v.

HERCHANEL.COM, et al.,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Preliminary Injunction [DE 6] ("Motion"). The Court has carefully reviewed the Motion, the attached declarations and exhibits [DE 6-1–6-10], and the record in this case. The Court has also heard oral argument from Plaintiff's counsel at a hearing on August 9, 2013. Although Defendants received notice of these proceedings, none of them responded to the Motion, nor did they appear at the preliminary-injunction hearing.

**I.  Background**

On July 23, 2013, Plaintiff Chanel, Inc., filed this action against eight-five partnerships and business associations that sell clothing, accessories, and similar goods through various websites. See DE 1 (Compl. for Inj. Relief).[1] Plaintiff's Complaint alleges that Defendants' goods bear counterfeit and confusingly similar imitations of several registered trademarks owned by Plaintiff (the "Chanel Marks"). More, Plaintiff

---

[1] Plaintiff has voluntarily dismissed three of the Defendants because their "associated websites are subject to an Order of another District Court in an unrelated action by a different trademark owner." DE 10 (Notice of Voluntary Dismissal); see DE 13 (Order Dismissing Certain Defs.). Plaintiff's Complaint also names unknown "John Doe" Defendants.

contends that many of the Defendants have acted with a bad-faith intent to profit from the Chanel Marks by registering website domain names that are identical to, confusingly similar to, or dilutive of the Chanel Marks.  The Complaint asserts claims for trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and common-law unfair competition.  See DE 1 at 13-17.  Plaintiff seeks preliminary and permanent injunctions barring further illegal conduct by Defendants, as well as an order requiring that Defendants' domain names be disabled and either cancelled or transferred to Plaintiff's control.  See id. at 17-19.

Two days after filing its Complaint, Plaintiff filed an *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction, see DE 6, along with declarations and exhibits supporting that filing.  See DE 6-1–6-10.  On July 26, 2013, the Court granted Plaintiff's request for a temporary restraining order ("TRO").  See DE 8 (Order Granting *Ex Parte* Appl. for Entry of TRO).  Based on strong evidence that Defendants are selling counterfeit and infringing versions of Plaintiff's trademarked goods, the Court found that Plaintiff had established all four requirements for a TRO: (1) a substantial likelihood of success on the merits, (2) that Plaintiff would suffer irreparable injury if a restraining order were not granted, (3) that the threatened injury to Plaintiff outweighed the harm the relief would cause to Defendants, and (4) that entry of the restraining order would serve the public interest.  See DE 8 at 6-8; Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam).[2]  In

---

[2]  Additionally, the Court determined that a TRO should issue without notice to Defendants because they could "easily and quickly transfer the registrations for many of

2

accordance with these findings, the Court temporarily restrained Defendants and associated persons from using infringing versions of the Chanel Marks in connection with their products, websites, and domain names.  See DE 8 at 8-9.  The Court also ordered the registrars for Defendants' domain names to transfer those names to a holding account, after which all traffic to the websites would be redirected to a page displaying the filings in this case.  See id. at 9-12.  In addition, the Court required Plaintiff to post a bond of $10,000 and to promptly serve all filings in this case on Defendants through their known e-mail addresses and the webpage containing the case filings.  See id. at 12-13.[3]

In the same Order, the Court set a hearing on Plaintiff's Motion for Preliminary Injunction and ordered Defendants to file and serve any Response to the Motion by August 5, 2013.  See DE 8 at 13.  Further, the Court directed the parties, by noon on August 7, 2013, to file Witness and Exhibit Lists for the preliminary-injunction hearing.  See id. at 14.  The Court cautioned Defendants that "if they do not timely respond to Plaintiff's Motion for Preliminary Injunction and do not appear at the scheduled hearing, the Court may enter a preliminary injunction against them by default."  Id. (emphasis omitted).

As noted above, Defendants neither responded to the Motion nor appeared at the hearing.  Before the hearing, Plaintiff identified two witnesses who had submitted written

---

the . . . Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief."  DE 8 at 7-8; see Fed. R. Civ. P. 65(b)(1).

[3] The record indicates that Plaintiff has complied with the bond and service requirements.  See DE 16 (Pl.'s Notice of Filing Bond); DE 14-15, 18-19 (Certificates of Service).

3

declarations in support of the Motion. See DE 17 (Pl.'s Witness List and Ex. List). Because Defendants did not appear at the hearing, however, Plaintiff relied on the witnesses' declarations in lieu of live testimony.

## II.     Discussion

The preliminary injunction sought by Plaintiff would maintain the relief granted in the TRO until this case is decided on the merits. See Fed. R. Civ. P. 65(b)(2) (providing that a TRO normally expires after 14 days). The requirements for issuing a preliminary injunction are the same as those for entering a TRO. See Schiavo, 403 F.3d at 1225-26 ("[T]he four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted . . . are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."). Because a preliminary injunction is "an extraordinary and drastic remedy," it may not be granted unless the moving party "clearly carries the burden of persuasion as to the four prerequisites." Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) (internal quotation marks omitted); see McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998). Unlike a TRO, a preliminary injunction requires notice to the adverse party and a hearing. See Fed. R. Civ. P. 65(a).

Here, Plaintiff is substantially likely to succeed on the merits of its claims. Plaintiff has presented clear evidence that Defendants are selling goods bearing unauthorized, infringing copies of the Chanel Marks, thereby confusing the public about the origin of those goods. See 15 U.S.C. §§ 1114, 1125(a). Plaintiff has likewise offered strong evidence that many of the Defendants have engaged in a bad-faith effort to profit from

4

the Chanel Marks by registering website domain names that improperly use those trademarks. See 15 U.S.C. § 1125(d). Further, allowing Defendants to continue this illegal conduct would cause irreparable harm to Plaintiff by reducing sales of its genuine trademarked goods and by depriving it of the reputation and goodwill associated with those products. Too, because Defendants have no right to sell counterfeit and infringing goods, or to use the Chanel Marks in their domain names, the balance of harms strongly favors Plaintiff. And halting Defendants' conduct—which involves the sale of illicit goods through unlawful means—serves the public interest. Plaintiff has therefore clearly proven all four requirements for a preliminary injunction. See Schiavo, 403 F.3d at 1225-26; Church, 30 F.3d at 1342; see also Louis Vuitton Malletier, S.A. v. Bags-Watch-Replicas.org, No. 12-62096-CIV, 2012 WL 5398634 (S.D. Fla. Nov. 2, 2012) (granting preliminary injunction based on similar evidence).

Although Defendants have been given notice of the Motion and an opportunity to respond, they have made no effort to rebut Plaintiff's evidence warranting preliminary injunctive relief. The Court thus concludes that Plaintiff's Motion should be granted.

### III. Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction [DE 6] is **GRANTED**;

2. All provisions of the Court's Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order [DE 8] shall remain in effect while this case is pending or until the Court orders otherwise; and

3. Plaintiff shall promptly serve a copy of this Order on Defendants through the means specified in paragraphs 7 and 14 of the Order Granting *Ex Parte*

Application for Entry of Temporary Restraining Order [DE 8 at 10, 13].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of August, 2013.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF